IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES B. POLK, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION 20-0093-WS-MU |
| | ) |
| TU JA BANG, *et al.*, | ) |
| | ) |
|     Defendants. | ) |

**ORDER**

This matter comes before the Court on defendants' Motion for Summary Judgment (doc. 52). The Motion has been briefed and is now ripe for disposition.[1]

**I.**    **Background Facts.**

Plaintiff, James B. Polk, brought this action against defendants, Tu Ja Da Bang and DH Transportation, Inc., to assert claims arising from an automobile accident that occurred on Interstate 65 in Mobile County on December 9, 2017. Defendant Bang was driving the tractor trailer that struck Polk's vehicle, and plaintiff maintains that DH Transportation owned and/or had custody or control of that tractor trailer. As set forth in the Amended Complaint (doc. 13),

---

[1] Although plaintiff was initially represented by counsel, he has been proceeding *pro se* since early March 2021, well before defendants filed their Motion for Summary Judgment. (*See* docs. 43 & 44.) In light of plaintiff's unrepresented status, the Court issued an Order on April 21, 2021, including a "Notice to Unrepresented Parties." That Notice explained Rule 56 of the Federal Rules of Civil Procedure, plaintiff's obligation to respond on summary judgment, and the potential consequences of not doing so. (*See* doc. 53.) In an abundance of caution because there were questions about whether plaintiff had received the April 21 Order, the Court entered a follow-up Order on June 3, 2021 that, *inter alia*, (i) cautioned plaintiff that he would not receive another opportunity to be heard on the Motion for Summary Judgment and that such Motion, if granted, may result in dismissal of his Complaint; (ii) directed plaintiff to review relevant portions of the April 21 Order explaining his responsibilities on summary judgment; and (iii) reminded plaintiff that "neither this Court nor any court staff is permitted to develop legal arguments for him or otherwise to act as his *de facto* counsel." (Doc. 57, PageID.367.) Plaintiff's understanding of these admonitions is manifested by his filing of a response brief (doc. 61) on June 30, 2021, and an amended response (doc. 62) on July 1, 2021.

Polk's claims sound exclusively in Alabama law, including against Bang for gross negligence (Count One), against Bang for wantonness / recklessness (Count Two), and against DH Transportation for negligent/wanton entrustment / supervision (Count Three).[2]  Federal subject-matter jurisdiction is properly predicated on the diversity provisions of 28 U.S.C. § 1332.  (*See* doc. 10.)

Viewed in the light most favorable to Polk, the non-movant on summary judgment, the record reveals the following relevant facts and circumstances:  In the early morning hours of December 9, 2017, Polk was driving to work, heading northbound on I-65.  (Doc. 51-1, PageID.309-10.)  According to Polk's testimony, it was dark and the roadway was icy and slippery, on the heels of a rare snowfall event in southern Alabama the night before.  (*Id.*, PageID.310-11.)  Although the posted speed limit was 55 mph, Polk was driving only 35 to 40 mph because of the slick conditions.  (*Id.*, PageID.312.)  Immediately before the Saraland exit on I-65, Polk saw a black Mercedes in front of him hit a bridge, lose control, and start spinning in front of his vehicle.  (*Id.*, PageID.313.)  For his part, Polk attempted to "slow [his] vehicle down so [he] can maybe direct [himself] around her or avoid hitting her."  (*Id.*)  During that time, Polk did not swerve, but instead focused on "trying to slow [his] vehicle down, keep control of [his] vehicle."  (*Id.*, PageID.314.)  Polk's testimony was emphatic that he "did not change lanes" and did not come to a complete stop.  (*Id.*, PageID.316-17.)[3]  According to Polk, he slowed down to

---

[2]  The Amended Complaint also includes as Count Four a negligence/wantonness claim against fictitious defendants, who are identified in purely generic terms as persons, entities or corporations who owned or operated the vehicle driven by Bang, who maintained or serviced such vehicle, or who supervised or allowed Bang to drive that vehicle.  (Doc. 13, PageID.141, ¶¶ 15-18.)  At no time since the inception of this litigation has Polk identified those defendants or sought to amend his pleadings to name them.  Fictitious party practice is generally not permitted in federal court, and the circumstances present here do not trigger the narrow exception to that rule.  *See, e.g., Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) ("As a general matter, fictitious-party pleading is not permitted in federal court."); *Smith v. Comcast Corp.*, 786 Fed.Appx. 935, 939 (11th Cir. Sept. 11, 2019) ("Our caselaw generally forbids fictitious-party pleading – that is, claims against fictitious or non-existent parties are usually dismissed."); *Hall v. Infirmary Health System*, 2007 WL 772560, *1 n.1 (S.D. Ala. Mar. 8, 2007) ("Fictitious party pleading is not generally permitted in federal court.").  Accordingly, Count Four is properly **DISMISSED** at this time as improper fictitious-party practice.

[3]  Record evidence is in conflict on this point.  Defendants' evidence is that Polk suddenly "darted" into a different lane, "slammed on brakes" and "came to a stop" before the accident.  (Doc. 51-2, PageID.320, #24; doc. 51-3, PageID.325.)  For summary judgment (Continued)

as little as 20 to 25 mph to attempt to avoid the out-of-control black Mercedes. (*Id.*) The only reason Polk abruptly slowed his vehicle was to prevent a collision with the Mercedes. (*Id.*) All indications are that Polk successfully maintained control of his vehicle at all times, despite the emergency created by the Mercedes and the icy roadway.

At that very moment, defendant Bang was also driving north on Interstate 65, traveling a number of car lengths behind Polk's vehicle. Bang was driving a truck that he owned and that was leased to DH Transportation. (Doc. 51-3, PageID.323, ¶ 2.)[4] Bang's truck was hauling a trailer at that time. (*Id.*) Bang was driving at approximately 50 mph in the far left lane on a

---

purposes, however, Polk's version of the facts is and must be credited. After all, this Court cannot weigh credibility or balance competing narratives in the movants' favor. In so determining, the Court notes that the video of the accident submitted by defendants as Exhibit A is inconclusive as to whether Polk changed lanes to avoid the Mercedes. If he did so, the lane change happened at least five seconds before the collision with Bang's vehicle. At a minimum, then, the video evidence refutes – for summary judgment purposes – defendants' apparent contention that Polk's vehicle darted or swerved in front of Bang immediately before the collision. Additionally, it is impossible to discern from the video whether Polk came to a complete stop (as defendants argue) or whether he simply slowed down before the accident. Because the video does not blatantly contradict plaintiff's version of the facts, this Court cannot and will not discard his testimony at the summary judgment stage. *See generally Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (11th Cir. 2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) ("in cases where a video in evidence obviously contradicts the nonmovant's version of the facts, we accept the video's depiction instead of the nonmovant's account, … and view the facts in the light depicted by the videotape") (citations and internal marks omitted).

[4] According to defendants, "Bang was an independent contractor who leased his truck to DH," and had been working for DH Transportation pursuant to that arrangement since October 18, 2016, or for more than one year before the accident occurred. (Doc. 51-4, PageID.328, #29.) Before contracting with him, DH Transportation completed a thorough screening / driver qualification process by, among other things, accessing and reviewing Bang's commercial driver's license status, his physical certification status, and information regarding all prior accidents or citations involving Bang. (Doc. 51-5, PageID.332, ¶ 4.) DH Transportation also verified that Bang was a qualified commercial truck operator, and discovered nothing in its screening process (which included drug screens and a medical examination) tending to show that Bang was not qualified or that he was an unsafe driver. (*Id.*, PageID.333, ¶¶ 5-6.) In subsequent regular reviews of Bang's record, driving competency and skill, DH Transportation uncovered no information indicating that Bang was an unsafe or unfit driver. (*Id.*, PageID.334, ¶ 9.) Plaintiff offers no evidence to rebut any of these facts.

roadway that, in his assessment, "appeared fine." (*Id.*, PageID.324, ¶ 5.) When Bang observed the black Mercedes "sliding on the icy bridge," he "immediately let off the gas and slowed down," applying his brakes. (*Id.*) As he did so, Bang "realized then that due to ice, [his] truck could not stop and was sliding on ice," such that he "could not avoid impact with Mr. Polk's car." (*Id.*, PageID.325.) Bang's tractor-trailer rear-ended Polk's van, at a speed that Bang estimates to be less than 15 mph. (*Id.*) Notwithstanding the snowfall the night before and the very cold conditions, Bang avers that "[p]rior to the accident, [he] had no notice that there was ice on any bridges, including the one where the accident occurred." (*Id.*, ¶ 6.) As Bang's truck struck Polk's van from behind, another vehicle on the bridge rear-ended Bang's truck. (*Id.*, ¶ 7.) Defendants' evidence is that, at the time of the wreck, Bang was not under the influence of drugs or alcohol, was not using any electronic devices, and had obtained the required hours of sleep the night before. (*Id.*, PageID.326, ¶ 8.)

**II.    Summary Judgment Standard.**

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P.  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact.  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

**III.     Analysis.**

Defendants now move for summary judgment on all three remaining counts of the Amended Complaint, including the gross negligence claim against defendant Bang (Count One), the wantonness/recklessness claim against Bang (Count Two), and the negligent/wanton entrustment/supervision claim against defendant DH Transportation (Count Three).  Each claim will be considered in turn.

**A.     Count One: Gross Negligence Against Bang.**

As for Count One, defendants maintain that Polk's gross negligence claim under Alabama law is properly evaluated using the same elements and standards applicable to ordinary negligence claims.  Caselaw supports this principle.  *See, e.g., Miller v. Bailey*, 60 So.3d 857, 867 (Ala. 2010) ("Gross negligence is negligence, not wantonness.") (citations omitted); *Fidelity-Phenix Fire Ins. Co. v. Lawler*, 81 So.2d 908, 912 (Ala.App. 1955) ("the rule laid down by our courts is that the word gross when used in connection with negligence, implies nothing more than negligence") (citations and internal quotation marks omitted); *Craft v. Triumph Logistics, Inc.*, 107 F. Supp.3d 1218 (M.D. Ala. 2015) ("Under Alabama law, gross negligence is a degree of negligence; it is not the same as wantonness.").  "The elements of a negligence claim are a duty, a breach of that duty, causation, and damage." *Armstrong Business Services, Inc. v. AmSouth Bank*, 817 So.2d 665, 679 (Ala. 2001).

In moving for summary judgment on Count One, defendants posit that the summary judgment record does not support a reasonable inference that Bang breached a duty owed to Polk.  Defendants face an uphill battle in advancing this argument.  "In general, a driver has the duty to exercise due care and to keep a lookout for others using the road." *Miller v. Cleckler*, 51 So.3d 379, 385 (Ala.Civ.App. 2010).  Moreover, in Alabama, "summary judgment is rarely appropriate in a negligence action." *Miller*, 51 So.3d at 383 (citation omitted).  Indeed, "[w]hether a person involved in an accident acted reasonably in operating his motor vehicle depends on all of the circumstances surrounding the accident; the question is ordinarily one for the jury." *Senn v. Alabama Gas Corp.*, 619 So.2d 1320, 1322 (Ala. 1993).  Viewing the limited record evidence in the light most favorable to Polk, a reasonable finder of fact could conclude that (i) Bang should not have been operating his tractor trailer in the far left lane on I-65 because he was neither passing a vehicle nor preparing for a left exit; (ii) Bang was driving too fast for conditions, given the recent snowfall, the cold temperatures, and the obvious potential for icing

on bridges and other road surfaces; and (iii) Bang failed to keep a proper lookout and did not begin to apply his brakes until it was too late to avoid the accident on an icy bridge. A reasonable fact finder reaching such conclusions could find Bang liable to Polk on the gross negligence cause of action. *See, e.g., Blakley v. Johnson*, 80 So.3d 250, 256-57 (Ala.Civ.App. 2010) (negligence claim properly submitted to jury where plaintiff's evidence supported a reasonable conclusion that defendant had operated logging truck at unsafe speed or had followed too closely); *Nelson By and Through Sanders v. Meadows*, 684 So.2d 145, 148 (Ala.Civ.App. 1996) (reversing summary judgment for defendant where evidence supported reasonable conclusion that he was driving too fast on wet roads even though he did not exceed posted speed limit).

   Defendants offer two primary counterarguments. First, they invoke the doctrine of sudden emergency / unavoidable accident. Under Alabama law, "a person faced with a sudden emergency calling for quick action is not held to the same correctness of judgment and action that would apply if he had had the time and opportunity to consider fully and chose the best means of escaping peril or preventing injury." *Dairyland Ins. Co. v. Jackson*, 566 So.2d 723, 727 (Ala. 1990). Defendants' theory is that the out-of-control black Mercedes created a sudden emergency or unavoidable accident, with Polk's injuries being caused by "exigent circumstances combined with poor weather conditions." (Doc. 52-1, PageID.349.) The trouble with this argument is that a reasonable jury could see the facts differently than defendants characterize them. Based on the video and the testimony of both Polk and Bang, taken in the light most favorable to plaintiff, a reasonable fact finder could conclude that the Mercedes was far enough away from Bang when it first lost control that Bang should have been able to avoid striking Polk had he exercised due care by maintaining a proper lookout, remaining in the appropriate lane of travel, and driving at an appropriate rate of speed given his load and the obviously problematic weather/road conditions. As such, this case is distinguishable on its face from the three "sudden emergency" cases on which defendants rely.[5] Besides, two of those cases were not resolved on

---

   [5] *See Latham v. Redding*, 628 So.2d 490 (Ala. 1993) (rejecting as speculative plaintiff's unsupported arguments that defendant driver was speeding or careless, and affirming summary judgment for defendant); *Jackson*, 566 So.2d at 727 (finding that there was sufficient evidence for jury to find sudden emergency, not that any reasonable jury must find sudden emergency where engine of adjacent vehicle "blew up," creating cloud of smoke that obscured
(Continued)

summary judgment, but rather found jury questions as to "sudden emergency," just as this Court does today, while the third did not appear to address the "sudden emergency" doctrine at all. And the two cases involved circumstances that were arguably far more exigent or split-second than those at issue here. The point is that based on this record, a reasonable finder of fact <u>could</u> find that Bang faced a sudden emergency that ratcheted down the standard against which his actions are judged, but would not be <u>required</u> to do so, so as necessitate entry of summary judgment for defendants on Count One.

      Second, defendants offer countervailing reasonable factual inferences that may be gleaned from the summary judgment record. Specifically, they say the spinning Mercedes forced Polk to swerve into Bang's lane of travel, after which Bang could not avoid impact because of "unknown" icy conditions that caused all vehicles on the bridge to slide. (Doc. 52-1, PageID.346.) Defendants further assert that Bang was driving well under the speed limit, that he began braking immediately after the Mercedes spun out of control, that he was forced to brake only because Polk swerved into his lane and came to a complete stop, that there had been no ice anywhere on Bang's drive that morning until the time of the wreck, that ice was the only reason Bang could not stop, and that "the ice impacted all of the drivers." (*Id.*, PageID.350.) On this record, a reasonable finder of fact could adopt defendants' version of the facts. But that reasonable finder of fact would not be required to do so; rather, he or she could instead embrace conflicting inferences that Bang should have known about treacherous road conditions, that his testimony about encountering no ice is not credible given contrary record facts, that he was driving too fast for those conditions and was improperly in the passing lane, that Polk neither swerved into his lane nor came to a complete stop in front of him,[6] that Bang failed to keep a

---

driver's vision and forced him to swerve into oncoming traffic); *Jefferson County v. Sulzby*, 468 So.2d 112, 115-16 (Ala. 1985) (finding jury question as to sudden emergency where driver testified that dangerous conditions "happened in a split second" such that he "didn't know what to do").

    [6]    This point highlights an internal inconsistency in defendants' version of the facts. Recall Bang's averment that Polk "swerve[d] into [Bang's] lane to avoid the spinning car, and … came to a stop in front of [Bang's] truck." (Doc. 51-3, PageID.325.) But defendants also insist that "all of the other autos on the bridge also were not able to have their vehicles brought under control … the ice impacted all of the drivers." (Doc. 52-1, PageID.350.) Defendants are trying to have it both ways. They would apparently argue that the icy roadway affected every driver on the bridge other than Polk, who (according to defendants) somehow was able to change lanes and (Continued)

proper lookout and did not brake in a timely manner, and so on. These dueling inferences give rise to material disputes of fact that call for resolution by a jury at trial, not by a court on summary judgment. Accordingly, the Motion for Summary Judgment is **DENIED** as to Count One.

      **B.**    **Count Two: Wantonness/Recklessness Against Bang.**

Defendants also move for summary judgment on Count Two, which is a claim against Bang for wantonness/recklessness. By statute, Alabama defines "wantonness" as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala. Code § 6-11-20(b)(3); *see also Alfa Mutual Ins. Co. v. Roush*, 723 So.2d 1250, 1256 (Ala. 1998) (wantonness involves the "conscious doing of some act … and being conscious that, from doing … an act, injury will likely or probably result"). Thus, "[n]egligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury." *Ex parte Essary*, 992 So.2d 5, 9 (Ala. 2007) (citations omitted).

Defendants persuasively argue that the summary judgment record is devoid of evidence from which a reasonable finder of fact could conclude that Bang was conscious that injury would likely or probably result from his actions. The uncontroverted facts of record are that Bang was driving below the posted speed limit, that he was not distracted by a cell phone or other device, that traffic was not heavy, and that he did apply his brakes and slow down before the accident, which suggests a degree of attentiveness. Stated differently, while the record facts do support a reasonable inference of inadvertence, careless or negligence, they do not give rise to an inference that Bang was acting with consciousness that he was operating his vehicle in a manner that

---

come to a complete stop in front of Bang when the hazard of the spinning Mercedes appeared, even as every other driver slid out of control on the ice. Likewise, defendants maintain that the ice was so treacherous that all cars were sliding out of control, but that Bang had no knowledge of the treacherous road surface conditions until that precise moment. A reasonable finder of fact would not have to accompany defendants on these leaps of logic. Rather, the jury could instead deem some of defendants' evidence incredible and conclude that Bang could have controlled his vehicle (as Polk did his) and/or that Bang knew or should have known of the dangerous roadway conditions but instead drove too fast and failed to maintain a proper lookout to give himself enough time to maneuver out of harm's way in the event of a roadway emergency. Either of those conclusions could support a finding of breach of duty, and therefore negligence.

would likely result in injury.  Plaintiff's argument to the contrary is unpersuasive.[7]  Accordingly, defendants' Motion for Summary Judgment is **GRANTED** as to Count Two.

      **C.**      **Count Three: Negligent/Wanton Entrustment/Supervision Against DH.**

Recall that Count Three is pleaded as a claim of negligent/wanton entrustment/ supervision against DH Transportation.  As set forth in the Amended Complaint, plaintiff's theory of liability in Count Three is that DH Transportation "was the owner and/or had custody and/or control of the vehicle being operated by" Bang, and that DH Transportation "knew or … should have known that Defendant BANG, was incompetent, unfit, unsafe, unqualified or otherwise incapable of properly and cautiously driving said vehicle." (Doc. 13, PageID.140, ¶¶ 11, 12.)

As defendants correctly point out, there is not a shred of evidence to support this cause of action on either a negligent entrustment or a negligent supervision theory.  As to negligent entrustment, Alabama law requires a plaintiff to show "(1) an entrustment; (2) to an incompetent; (3) with knowledge that he is incompetent; (4) proximate cause; and (5) damages." *Edwards v. Valentine*, 926 So.2d 315, 320 (Ala. 2005) (citations omitted).  A presumption of "entrustment" arises in Alabama "when one person drives a car belonging to another." *Id.* (citation omitted). But the uncontroverted record evidence is that Bang was driving a truck that belonged to him, not to DH Transportation; therefore, there was no entrustment.  Even if there had been an entrustment, Count Three would fail absent proof "that the operator of the vehicle was an incompetent or reckless person," which may "be established by evidence of previous acts of negligent or reckless driving, … previous accidents, or previous acts of driving while intoxicated." *Id.* at 321-22 (citations omitted).  There is no evidence that Bang had ever engaged in previous acts of negligent or reckless driving, that he had been in previous accidents, or that

---

      [7]      In an effort to avoid summary judgment on the wantonness claim, Polk merely argues that the record supports an inference that Bang was not as attentive as he could have been because several seconds elapsed between the dangerous condition ahead and the accident itself. (Doc. 62, PageID.460.)  Such evidence certainly lends support to a negligence theory; however, this not the kind of evidence that can give rise to a finding that Bang, "with reckless indifference to the consequences, consciously and intentionally [did] some wrongful act or omit[ted] some known duty." *Carter v. Treadway Trucking, Inc.*, 611 So.2d 1034, 1035 (Ala. 1992) (citations omitted).  Plaintiff points to nothing in the record that might allow a finder of fact to determine that Bang's conduct amounted to anything more than mere inadvertence.  As such, the wantonness cause of action fails as a matter of law.

he otherwise qualified as "incompetent" under Alabama law. Even if there were, there is no evidence that DH Transportation had knowledge or any reason to know of Bang's incompetence, that its efforts to screen him and monitor his performance disclosed any such evidence of incompetence, or that those screening activities were in any way deficient. For all of these reasons, Polk cannot maintain a claim of negligent or wanton entrustment against DH Transportation in this case.

Polk's alternative attempt in Count Three to travel under a negligent / wanton supervision theory fares no better. "Under Alabama law, the tort of negligent or wanton hiring, training, supervision, and retention requires a plaintiff to show an employer knew or should have known its employee was incompetent." *Bailey v. DAS North America, Inc.*, 473 F. Supp.3d 1310, 1334 (M.D. Ala. 2020); *see also Shaw v. City of Selma*, 241 F. Supp.3d 1253, 1281 n.32 (S.D. Ala. 2017) ("Under Alabama law, a critical element of a claim of negligent hiring, training and supervision is proof of the employer's actual or constructive awareness of the employee's incompetency.") (citation and internal quotation marks omitted); *Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp.2d 1273, 1288 (N.D. Ala. 2013) (in negligent supervision context, "a plaintiff must demonstrate that the employer knew, or in the exercise of ordinary care should have known, that its employee was incompetent") (citations omitted). For starters, there is no evidence to suggest an employer / employee relationship existed between DH Transportation and Bang. Even if there were, as already stated, the record does not support a finding that Bang was incompetent, much less that DH Transportation knew or should have been aware of any such incompetence prior to the accident in question. Accordingly, Polk cannot rescue Count Three by reframing his claim against DH Transportation as one for negligent / wanton supervision rather than negligent / wanton entrustment. Either way, defendants are entitled to summary judgment, and Count Three is properly **DISMISSED** at this time.[8]

---

[8] The futility of Count Three is underscored by plaintiff's own briefing. In the face of defendants' compelling arguments that summary judgment must be granted as to Count Three, Polk offers almost no substantive response. Instead, he indicates that he "reserves the right to dismiss this action as to DH Transportation without prejudice," and to refile against that entity "at a future date, should it be found they have culpability." (Doc. 62, PageID.460.) Of course, none of that is an argument that Count Three should survive summary judgment. At most, Polk indicates that Bang was incompetent because "Plaintiff is confident he can show that the Defendant was in fact reckless/negligent in his operation of the vehicle" on the morning of the (Continued)

**IV.      Conclusion.**

For all of the foregoing reasons, defendants' Motion for Summary Judgment (doc. 52) is **GRANTED IN PART**, and **DENIED IN PART**. The Motion is **GRANTED** as to Counts Two, Three and Four, all of which are **DISMISSED WITH PREJUDICE** because there are no genuine issues of material fact, and defendants are entitled to judgment in their favor as a matter of law. The Motion is **DENIED** as to Count One, the gross negligence claim against defendant Bang, and this action shall proceed to trial as to that cause of action. There being no remaining claims against DH Transportation, the Clerk's Office is **DIRECTED** to terminate that entity as a party defendant.

DONE and ORDERED this 12th day of August, 2021.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

accident. (*Id.*, PageID.461.) But showing that Bang was negligent in driving the vehicle on the morning of the accident with Polk does nothing to establish that Bang was incompetent before the date of the accident, much less DH Transportation's prior knowledge of such incompetence. "[K]nowledge by the entrustor of the driver's incompetence is fundamental to the negligent entrustment claim; without proof of such knowledge, the negligent entrustment claim must fail." *Day v. Williams*, 670 So.2d 914, 916 (Ala. 1995). In short, Polk's summary judgment brief does not make a persuasive showing that Count Three could possibly be viable on this record.